DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Court of Common Pleas, Juvenile Division, judgment that awarded Jonathan Nibert's permanent custody to Gallia County Children Services (GCCS).
 {¶ 2} Appellant Mary Nibert, Jonathan's natural mother, raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
"The trial court deprived appellant of her fourteenth amendment right to due process of law by failing to adjudicate the child as a dependent child under the applicable statutes and by failing to hold separate adjudicatory and dispositional hearings."
 SECOND ASSIGNMENT OF ERROR:
"The trial court committed a reversible error by ignoring the statutory structure in O.R.C. 2151.414 when rendering the decision for the permanent custody hearing."
 {¶ 3} On February 23, 2004, GCCS filed a complaint and requested Jonathan's emergency temporary custody. The complaint alleged that the child accused his older brother of sexual abuse. The trial court granted emergency custody.
 {¶ 4} On February 24, 2004, the trial court held a shelter care hearing and placed Jonathan in GCCS' "emergency temporary custody." The judgment entry further states: "the Judge * * * finds that said child was within the provisions of THE JUVENILE COURT CODE OF THE STATE OF OHIO and is a Dependent child as alleged in the complaint * * *."
 {¶ 5} On July 27, 2004, GCCS filed a motion and requested the trial court award GCCS permanent custody. In October 2004, the trial court held a hearing on the permanent custody motion and on November 12, 2004, granted the motion. The trial court's judgment entry states: "This Court previously ruled that the minor * * * was a dependent child as required by the Ohio Revised Code." This appeal followed.
 I {¶ 6} In her first assignment of error, appellant asserts that the trial court erred when it granted permanent custody to GCCS without first holding a separate adjudicatory hearing to determine whether the child is dependent. Appellant contends that: (1) the trial court incorrectly stated in its November 12, 2004 Judgment Entry that it previously adjudged Jonathan a dependent child; and (2) the February 25, 2004 Judgment Entry, despite its wording, did not formally adjudicate Jonathan a dependent child because the purpose of that hearing was solely to determine the validity of the emergency custody order.
 {¶ 7} Appellee counters that: (1) the trial court's February 25, 2004 judgment after the February 24, 2004 hearing constitutes a dependency adjudication; and (2) the February 25, 2004 judgment constitutes a final appealable order from which appellant cannot now appeal because appellant failed to timely file her notice of appeal.
 {¶ 8} Initially, we note that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child.Santosky v. Kramer (1982), 455 U.S. 745, 753; In re Murray (1990),52 Ohio St.3d 155, 156. Moreover, a parent has an "essential" and "basic civil right" to raise his or her children. Murray at 156. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106, quoting Inre R.J.C. (Fla.App. 1974), 330 So.2d 54, 58. Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 9} The termination of parental rights has been described as "`the family law equivalent of the death penalty in a criminal case.'" In reHoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶ 14, quoting In re Smith
(1991), 77 Ohio App.3d 1.16. As such, "in permanent custody proceedings, parents must be afforded due process before their rights can be terminated." In re Hoffman, at ¶ 15, citing Santosky v. Kramer (1982),455 U.S. 745. Due to the substantial nature of the right, parents must be afforded "every procedural and substantive protection the law allows." Inre Hayes (1997), 79 Ohio St.3d 46, 48. "When the State moves to destroy * * * familial bonds, it must provide the parents with fundamentally fair procedures." Santosky 455 U.S. at 753-754.
 {¶ 10} Additionally, appellate courts apply a de novo standard when reviewing a lower court's ruling with respect to questions of law. In reJones (April 13, 2000), Gallia App. No. 99CA4.
 {¶ 11} In the case sub judice, appellant asserts that the trial court's failure to follow a bifurcated hearing process and to specifically adjudicate the child as a dependent child constitutes reversible error. We reluctantly agree with appellant and conclude that the trial court improperly awarded permanent custody to GCCS without first adjudicating the child as dependent.[1]
 {¶ 12} In In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, the Ohio Supreme Court held: "In proceedings where parental rights are subject to termination, both the Juvenile Rules and the Revised Code prescribe that such proceedings be bifurcated into separate adjudicatory and dispositional hearings. (R.C. 2151.353 and Juv.R. 29 and 34), construed and applied)." Id. at paragraph one of the syllabus. Juv.R. 29, which focuses on the adjudicatory hearing, provides that if the allegations in the complaint are proven, the trial court must enter an adjudication and proceed to disposition. See Juv.R. 29(F)(2)(a). Juv.R. 34, which focuses on the disposition, states that "[t]he dispositional hearing for an adjudicated abused, neglected, or dependent child shall be held at least one day but not more than thirty days after the adjudicatory hearing is held." See Juv.R. 34()A).
 {¶ 13} In Baxter, the Court reasoned that the proceedings must be "bifurcated into separate adjudicatory and dispositional hearings because the issues raised and the procedures used at each hearing differ. The issue at the adjudicatory stage of a dependency case is whether a petitioner has proven, by clear and convincing evidence, that the child is in fact dependent. The issue at the dispositional stage involves a determination of what is in the child's best interests. There must be strict adherence to the Rules of Evidence at the adjudicatory stage. Yet, `any evidence that is material and relevant, including hearsay, opinion and documentary evidence', is admissible at the dispositional stage." Baxter at 233, citing Juv.R. 34(B).
 {¶ 14} Appellee contends that the February 25, 2004 judgment constitutes a dependency adjudication and that it constitutes a final appealable order. Appellee thus asserts that appellant failed to file a timely notice of appeal. We disagree with appellee. The record reveals that the February 24, 2004 hearing was a detention-shelter care hearing. First, the trial court stated that the proceedings were not "a hearing where * * * the dependency issue is being argued." Instead, according to the trial court, the hearing was to determine whether GCCS had "sufficient evidence to base * * * an initial finding of dependency to remove the child." When the trial court adjourned the hearing, it ordered that "emergency temporary custody" continue in GCCS and stated that it intended to set a further hearing within thirty days.
 {¶ 15} Second, we note that the evidence introduced at the February 24, 2004 hearing does not support a dependency determination. None of GCCS' witnesses testified to any first hand knowledge of abuse and all admitted that Jonathan's allegations had not yet been investigated or proven. Instead, the witnesses testified that Jonathan's allegations formed the basis for the complaint that sought emergency temporary custody and further supported a continuance of that order.
 {¶ 16} We note that Juv.R. 13(B)(3) and R.C. 2151.33(D), which permit a trial court to make an ex parte temporary custody grant when "the best interest and welfare of the child" demand it, require a trial court to conduct a hearing to review the order "within seventy-two hours after it is issued or before the end of the next court day after the day on which it is issued, whichever occurs first." Juv.R. 13(B)(3); See R.C.2151.33(D). The court must give "written notice of the hearing to all parties to the action * * *." R.C. 2151.33(D); See Juv.R. 13(B)(3). In the case sub judice, the trial court granted an ex parte order for temporary emergency custody on February 23, 2004, thus indicating that the February 24, 2004 hearing was the statutorily required hearing to review the ex parte order. For these reasons, we agree with appellant that the trial court's February 25, 2004 judgment does not constitute a dependency adjudication.[2]
 {¶ 17} Subsequently, we note that the trial court granted GCCS' request to modify the complaint from one requesting temporary custody to one for permanent custody. At that point, the trial court had not held an adjudicatory hearing to determine whether Jonathan is a dependent child. On October 7-8, 2004, the trial court held what appears to be a dispositional hearing. In its judgment from that hearing, the trial court stated that it had "previously ruled that the minor * * * was a dependent child * * *." We again note, however, that our review of the record does not reveal any judgment that contains such an adjudication or reveals that the trial court did, in fact, hold an adjudicatory hearing. Therefore, we agree with appellant that the trial court granted permanent custody to GCCS without first properly adjudicating Jonathan a dependent child. Consequently, without first adjudicating the child as dependent, the trial court could not grant GCCS' request for permanent custody.[3]
See generally, Juv.R. 29; Juv.R. 34.
 {¶ 18} In conclusion, courts must carefully avoid circumventing the fundamentally important adjudicatory stage when terminating parental rights. The adjudicatory stage requires stringent application of the Rules of Evidence and forbids any consideration of the child's best interests. Baxter, supra, at 233. Instead, the adjudicatory hearing allows a trial court to hear the evidence and requires the trial court to determine, by clear and convincing evidence, whether a child is dependent. Id. A dispositional hearing then allows a trial court to benefit from relaxed rules of evidence to determine a child's best interest. Id. Omitting the adjudicatory hearing from the process is a substantial deprivation of a parent's due process rights and renders the process fundamentally unfair.
 {¶ 19} Accordingly, based on the foregoing reasons we hereby sustain the appellant's first assignment of error.
 II {¶ 20} In her second assignment of error, appellant asserts that the trial court erred in its order for permanent custody by misapplying R.C.2151.414. In light of our disposition of the appellant's first assignment of error, we find that her second assignment of error has been rendered moot. See App.R. 12(A)(1)(c).
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby sustain the appellant's first assignment of error, reverse the trial court's judgment, and remand this cause for further proceedings consistent with this opinion. At this juncture, we wish to emphasize that our ruling should not be construed in any manner whatsoever as a comment on the underlying merits of this matter and the allegations asserted in the dependency complaint. Rather, our judgment speaks solely to the procedural irregularity present in the case sub judice.
Judgment reversed and cause remanded.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and the cause remanded for further proceedings. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, P.J., Kline, J. McFarland, J.: Concur in Judgment 
Opinion
[1] We recognize that in Ohio, an agency may use one of two methods to obtain permanent custody of a child: (1) an agency may request permanent custody as an initial dispositional order as part of an initial abuse, neglect or dependency proceeding (see R.C. 2151.353(A)(4); In reMassengill (1991), 76 Ohio App.3d 220, 601 N.E. 206; R.C. 2151.414(D) and (E)); or (2) an agency first obtains a temporary custody order and thereafter files a motion for permanent custody (R.C. 2151.413(D)(1)). In the case sub judice we rely on both the appellee's statements and the trial courts's statements concerning the particular method employed by GCCS. We note that the trial court explicitly referred to the February 25, 2004 as a "dependency adjudication." As we point out in the opinion, however, we believe that the trial court was mistaken in that regard. Additionally, appellee in its appellate brief states (1) that the trial court found the child dependent after the February 24, 2004 hearing in the February 25, 2004 entry; and (2) citing Juv.R. 34(I), that no need existed to bifurcate the permanent custody hearing because "hearings to determine whether temporary orders regarding custody should be modified to orders for permanent custody shall be considered dispositional hearings and need not be bifurcated." Thus, the parties assert that the method employed here was a dependency adjudication, followed by an order of temporary custody and then a subsequent motion for permanent custody. As we point out in our opinion, however, we do not agree that the trial court properly adjudicated the child as a dependent child.
[2] Appellee also argues that the February 25, 2004 judgment constituted a final appealable order and that appellant's appeal is untimely. In support, appellee cites In re Murray (1990),52 Ohio St.3d 155, 556 N.E.2d 1169 in which the Ohio Supreme Court held that "[a]n adjudication by a juvenile court that a child is `neglected' or `dependent' as defined in R.C. Chapter 2151 followed by a dispositionawarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2151.02." (emphasis added) Id. at syllabus. We, however, disagree with appellee and find that the appellant did timely file her notice of appeal for two reasons. First, because the February 24, 2004 hearing was not an adjudicatory hearing from which the trial court could properly adjudge Jonathan a dependent child, the judgment did not constitute a final appealable order under Murray. Second, in order to constitute a final appealable order in dependency cases, a dependency finding (adjudication) must be accompanied by an order of disposition. Absent a dispositional order, an adjudication is premature and is not generally reviewable on appeal. In the instant case, the emergency temporary custody awarded after the shelter care hearing is not the type of disposition contemplated when determining whether an order is final and appealable in institutional custody cases.
[3] Interestingly, the trial court took a similar action involving the same appellant, but a different minor child, in In re Nibert, Gallia App. No. 03CA19, 2004-Ohio-429. In that case, we issued an entry "ordering the parties to either supplement the record or advise us regarding the court's adjudication of dependency." Id. at ¶ 4. The trial court issued a nunc pro tunc entry of dependency and acknowledged its failure to journalize the adjudication. Despite our entry drawing light to this issue, Appellant failed to raise an assignment or error concerning the procedural defects in the case. Therefore, we presumed the regularity of the proceedings and proceeded to the merits of Appellant's appeal. In the case sub judice, however, appellant affirmatively raised the procedural irregularities, which now form the basis of our reversal of the trial court's judgment.